UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**BLAGA JOSIFOSKI**,

    Plaintiff,

vs.

**AUSTRIAN AIRLINES OSTERREICHISCHE LUFTVERKEHRS AG** and
**DEUTSCHE LUFTHANSA AG**

    Defendants.

Case Number:

Hon.

_____

Mark Kelley Schwartz (P48058)
DRIGGERS, SCHULTZ & HERBST
Attorney for Plaintiff
3331 W. Big Beaver Road, Suite 101
Troy, MI  48084
Tel: (248) 649-6000
MSchwartz@DriggersSchultz.com

## COMPLAINT & DEMAND FOR JURY TRIAL

Plaintiff, **BLAGA JOSIFOSKI**, by and through her undersigned legal counsel, Driggers, Schultz & Herbst, sue Defendants **AUSTRIAN AIRLINES OSTERREICHISCHE LUFTVERKEHRS AG** and **DEUTSCHE LUFTHANSA AG**, stating as follows:

### THE PARTIES, JURISDICTION & VENUE

1. This is an action for personal injury damages resulting from an

accident arising under the Montreal Convention, a multilateral treaty, more formally known as the Convention for the Unification of Certain Rules Relating to Air Carriage by Air, opened for Signature at Montreal on May 28, 1999, and reprinted in S. Treaty Doc. 106-45 1999 WL 33292734 (entered into force November 4, 2003).[1]

    2.    The Court has original subject matter jurisdiction under 28 USC § 1331, as this matter arises under a treaty obligation of the United States, specifically, the Montreal Convention.

    3.    Plaintiff, **BLAGA JOSIFOSKI**, is presently and was at all times material a U.S. citizen, domiciled in and maintaining her principal and permanent residence in the Township of Macomb, Macomb County, State of Michigan.

    4.    Defendant **AUSTRIAN AIRLINES OSTERREICHISCHE LUFTVERKEHRS AG** ("Austrian Airlines") is a foreign corporation domiciled in and existing under the laws of the Republic of Austria with its principal place of business in Vienna, Austria.

    5.    Defendant **DEUTSCHE LUFTHANSA AG** ("Lufthansa") is a corporation organized and existing under the laws of the Germany with its principal place of business in Cologne, Germany.

    6.    At all times relevant, each of these Defendants were certificated by and held foreign air carrier permits issued by the United States Department of

---

[1] The text of the Montreal Convention is attached at **Exhibit A**.

2

Transportation.

7. At all times relevant, each of these Defendants was a common carrier engaged in the business of transporting passengers, including Plaintiff, for hire as air carriers.

8. Defendant Lufthansa owns Defendant Austrian Airlines.

9. At all relevant times, each of these Defendants engaged in code sharing, interlining and other agreements that permitted ticketing and selling seats on each other's flights and operating flights with the other's designator codes.

10. Each of the Defendants are members of the Star Alliance, a global airline alliance.

11. Each of these Defendants share the Star Alliance Logo on their marketing materials and aircraft, collaborating through a network of fifty global hubs to offer connections for passengers through a global network. According to its website, members of the Star Alliance coordinate projects and activities, digital infrastructure, frequent flyer integration, joint traveler lounges, and other passenger services to improve the travel experience.

12. At all material times, Defendant Austrian Airlines, was present in and conducted substantial business operations in the State of Michigan, including through the sale and operation of flights on its own aircraft, code share flights, interline flights, sales of tickets to customers located in Michigan, including the sale of a ticket to Plaintiff, all directly and indirectly, for international carriage

3

commencing in and terminating from Detroit Metropolitan Wayne County Airport ("DTW"); each and all of which being sufficient to establish limited personal jurisdiction under MCL § 600.715.

13. Alternatively, personal jurisdiction over Defendant Austrian Airlines is appropriate under Fed. R. Civ. P. Rule 4(k)(2) as this matter arises under federal law, that is, a multilateral treaty obligation to which the United States is a signatory, and Austrian Airlines, an Austrian company with its principal place of business in Vienna, Austria, is not subject to jurisdiction in any state courts of general jurisdiction.

14. Exercise of personal jurisdiction under Fed. R. Civ. P. Rule 4(k)(2) as to Austrian Airlines is consistent with due process, in particular the Fifth Amendment to the United States Constitution, as Austrian Airlines has sufficient minimum contacts with the United States as a whole in that it purposefully avails itself of the American market by each or all of the following:

- a. Operates in the United States under the authority of a Foreign Air Carrier Permit (as amended) issued by the United States Department of Transportation;
- b. Directly operates its own aircraft from six gateway cities in the United States[2];
- c. Engages in the direct sales of airline ticket to U.S. citizens and residents in the United States through its website, *www.austrian.com*;
- d. Engages in the direct and indirect sale of airline tickets to U.S. citizens and residents through code sharing, interlining and other

---

[2] Upon information and belief, Austrian Airlines operates its own aircraft directly from the following U.S. gateway cities: Chicago, Los Angeles, Boston, New York, Newark and Washington D.C.

agreements;

e. Upon information and belief, employs individuals in the United States; and,

f. Upon information and belief, leases real property in the United States.

15. Plaintiff's claims arise out of Austrian Airlines' contacts with the United States as it sold air travel to Plaintiff, in Michigan, for two flights operated by Austrian Airlines on international carriage that commenced and terminated in Michigan, and the accident — the subject matter of this lawsuit — occurred while Plaintiff was on a brief layover (in the course of any of the operations of embarking or disembarking) for those flights.

16. Exercise of personal jurisdiction over Austrian Airlines is fair and reasonable based upon the facts alleged above and further because Austrian Airlines has availed itself of the federal courts on prior occasions and the United States has a strong interest in enforcing its treaty obligations, especially with respect to its own citizens, such as Plaintiff.

17. At all material times, Defendant Lufthansa was present in and conducted substantial business operations in the State of Michigan, including the operation of its own aircraft to and from Detroit Metropolitan Wayne County Airport ("DTW"), operations of code share and interline flights to and from DTW; sales of tickets on both its own aircraft and code shared flights to customers located in Michigan, directly and indirectly, the operation, lease and use of airport

5

facilities at DTW, operation and ownership in the Detroit Airlines' North Terminal Consortium, Inc., a/k/a DANTEC, a Michigan corporation, that operates the North Terminal at Detroit Metropolitan Wayne County Airport, and finally, Plaintiff purchased her ticket for international carriage aboard Lufthansa, which included flights aboard its own aircraft and that of its code share partners, in Michigan, any and all of these being sufficient to exercise limited personal jurisdiction under MCL § 600.715.

18. Alternatively, personal jurisdiction over Defendant Lufthansa is appropriate under Fed. R. Civ. P. Rule 4(k)(2) as this matter arises under federal law, that is, a multilateral treaty obligation to which the United States is a signatory, and Lufthansa, a German company with its principal place of business in Cologne, Germany, is not subject to jurisdiction in any state courts of general jurisdiction.

19. Exercise of personal jurisdiction under Fed. R. Civ. P. Rule 4(k)(2) as to Lufthansa is consistent with due process, in particular the Fifth Amendment to the United States Constitution, as Lufthansa has sufficient minimum contacts with the United States as a whole in that it purposefully avails itself of the American market by each or all of the following:

   a. Operates in the United States under the authority of a Foreign Air Carrier Permit (as amended) issued by the United States Department of Transportation;
   b. Directly operates its own aircraft from multiple gateway cities in the

      United States;

c. Engages in the direct sales of airline ticket to U.S. citizens and residents in the United States through its website, www.lufthansa.com;

d. Engages in the direct and indirect sale of airline tickets to U.S. citizens and residents through code sharing, interlining and other agreements;

e. Upon information and belief, employs individuals in the United States; and,

f. Upon information and belief, leases real property in the United States.

20. Plaintiff's claims arise out of Lufthansa's contacts with the United States as it sold air travel to Plaintiff, in Michigan, for two flights operated by Austrian Airlines on international carriage that commenced and terminated in Michigan, and the accident — the subject matter of this lawsuit — occurred while Plaintiff was on a brief layover (in the course of any of the operations of embarking or disembarking) for those flights.

21. Exercise of personal jurisdiction over Lufthansa is fair and reasonable based upon the facts alleged above and further because Lufthansa has availed itself of the federal courts on prior occasions and the United States has a strong interest in enforcing its treaty obligations, especially with respect to its own citizens, such as Plaintiff.

22. The Montreal Convention provides the exclusive cause of action against the Defendant carriers for the accident.

23. Venue is found in this judicial district under Montreal Convention

7

Article 33, as the United States is a State Party in this international carriage[3], and: 1) this judicial district is the place of destination, 2) this judicial district is the place of business through which the contract for Plaintiff's carriage was made, or 3) this judicial district is where the Plaintiff has her principal and permanent residence, and the Defendants operate services for carriage of passengers on their own aircraft or on another carrier's aircraft pursuant to a commercial agreement.

24. Additionally, venue is proper under 28 USC §1391(b)(3).

### COMMON FACTUAL ALLEGATIONS IN SUPPORT OF PLAINTIFF'S ACTION UNDER THE MONTREAL CONVENTION

25. On or about May 2, 2023, Plaintiff purchased tickets for International Carriage (as that term is defined in Montreal Convention, Art. 1.2) commencing and terminating, on July 5, 2023 and September 7, 2023, respectively, at Detroit Metropolitan Wayne County Airport (DTW), with agreed stopping places in Frankfurt, Germany ("FRA") Skopje, North Macedonia ("SKP-Alexander the Great") and Vienna Austria ("VIE").

26. The United States is a State Party to the Montreal Convention.

27. On September 7, 2023, Plaintiff arrived in Vienna aboard Lufthansa Flight No. 6393, operated by Austrian Airlines.

28. Plaintiff was scheduled to leave Vienna approximately one hour later aboard Lufthansa Flight No. 6327, also operated by Austrian Airlines.

---

[3] The Plaintiff purchased roundtrip beginning and ending at Detroit Metropolitan Wayne County Airport, thus the United States, a State Party, is both the place of her departure and the place of her destination under Montreal Art. 1.2.

8

29. Plaintiff had previously requested wheelchair assistance to help with her mobility needs.

30. Landing in Vienna, Austrian's flight crew directed Plaintiff to exit the aircraft via the aft door, directly onto the tarmac, and into a van.

31. Plaintiff was driven to the terminal in the van and was taken into a room while she, and others who had requested wheelchair assistance, awaited the arrival of their wheelchairs and wheelchair attendants.

32. Plaintiff was provided a wheelchair and attendant who took her to the gate for her connecting flight.

33. At all times relevant, the wheelchair attendant was either an employee, or was an agent or servant of Defendants Lufthansa or Austrian, and both.

34. While waiting to board her next flight, Plaintiff informed the wheelchair attendant that she needed to use the restroom.

35. Plaintiff was wheeled to a set of stairs by the F and G boarding gates, and informed by the wheelchair attendant that the ladies' restroom was located at the bottom of the stairs.

36. Plaintiff requested to be taken to another restroom where she would not be required to use the stairs, but was informed by the attendant that this was the only restroom available.

37. Needing to use the restroom, Plaintiff had no alternative but to use the

staircase.

38. Plaintiff began descending the stairs while holding onto the staircase railing.

39. There were other passengers on the staircase.

40. Approximately one or two steps before the bottom of the staircase Plaintiff was jostled by an unidentified person and fell, fracturing her ankle.

41. Plaintiff was wearing appropriate footwear including rubber soled shoes.

42. At all relevant times Plaintiff remained within the secure "sterile" area of the airport during her short layover.

43. At all times Plaintiff was within the care, custody and control of the wheelchair attendant, an employee, agent or servant of Defendants.

**DEFENDANTS' LIABILITY UNDER THE MONTREAL CONVENTION**

44. On September 7, 2023, there was in force and in effect in the United States a certain multi-lateral treaty relating to the rules governing international carriage by air known as the Montreal Convention.

45. On September 7, 2023, there was an accident — an unexpected or unusual happening — that caused injury to Plaintiff.

46. Under Article 17.1 of the Montreal Convention, Defendant carriers are strictly liable for all damages sustained in the case of bodily injury of a passenger, upon condition only, that the accident which caused the injury took

10

place "on board the aircraft or in the course of any of the operations of embarking or disembarking."

47. Under Montreal Article 40, Defendant Austrian Airlines and Defendant Lufthansa are mutually liable.

48. The accident occurred in the course of any of the operations of embarking or disembarking Defendant carriers' aircraft as it took place in the secure, sterile area of the airport while Plaintiff was being transported by wheelchair and wheelchair attendant reserved from the carriers as part of her international carriage.

49. The wheelchair and wheelchair attendant services were requested by Plaintiff and provisioned by the Defendant carrier, their employee, agent or servant, incident to Plaintiff disembarking her arriving flight and embarking her outbound flight.

50. As to Plaintiff's damages, for bodily and other injuries, Defendants cannot exclude or limit their liability for up to 128,821 Special Drawing Rights ("SDR"). Montreal Conv., Art. 21.1[4]

51. Plaintiff's damages exceed 128,821 SDR's.

52. Defendants are unable to meet their burden of proof to limit their liability for damages exceeding 128,821 SDR's because they cannot prove, as

---

[4] The Special Drawing Rights are a unique monetary unit, which acts only in the capacity of a reserve instrument. It is problem gated and controlled by the International Monetary Fund and composed of a basket of currencies. At the time of filing of this complaint, 1 SDR equals $1.33 US Dollars. **Exhibit B** contains the recently revised Limits of Liability.

11

required by Montreal Convention Art. 21.2 that:

1. The damages were not due to their negligence, wrongful act or omission, or the negligence, wrongful act or omission of their servants and agents, or,

2. Such damage was solely due to the negligence or wrongful act or omission of a third party. Montreal Conv., Art. 21.2

53. Accordingly, Defendants are strictly liable for Plaintiff's full measure of damages without the monetary limitation in Montreal Art. 21.1.

54. Defendants are not entitled to exoneration under Montreal Art. 20.

55. Blaga Josifoski did incur damages, including, without limitation, bodily injury and other injuries, including a fracture of her ankle requiring surgical repair with the implantation of permanent fixative hardware, permanent and unsightly scarring, physical pain and suffering, mental and emotional anguish, anxiety, fright and shock, embarrassment, humiliation and mortification, annoyance, discomfiture and denial of social pleasures and enjoyments, all in the past and continuing to the future, in addition to medical expenses and other economic damages all in the past and continuing through present and into the future.

**WHEREFORE**, Plaintiff, Blaga Josifoski, respectfully requests this Honorable Court award her damages that will fully and fairly compensate her for the damages, injuries, losses, and harms incurred to date as well as into the future, plus costs, interests, along with all other relief that is just and equitable under the

circumstances.

          Respectfully submitted,

          DRIGGERS, SCHULTZ & HERBST

          */s/ Mark Kelley Schwartz*
          By:  Mark Kelley Schwartz (P48058)
          Attorney for Plaintiff
          3331 West Big Beaver Road, Ste. 101
          Troy, MI 48084
          Telephone:  (248) 649-6000
          MSchwartz@DriggersSchultz.com

Dated:  August 12, 2024

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**BLAGA JOSIFOSKI**,

      Plaintiff,

                               Case Number:

vs.

                               Hon.

**AUSTRIAN AIRLINES OSTERREICHISCHE LUFTVERKEHRS AG** and
**DEUTSCHE LUFTHANSA AG**

      Defendants.

_____

Mark Kelley Schwartz (P48058)
DRIGGERS, SCHULTZ & HERBST
Attorney for Plaintiff
3331 W. Big Beaver Road, Suite 101
Troy, MI  48084
**Tel: (248) 649-6000**
MSchwartz@DriggersSchultz.com
_____

## **DEMAND FOR JURY TRIAL**

Plaintiff, **BLAGA JOSIFOSKI**, by and through her undersigned legal counsel, demands a trial by jury on all issues so triable.

                                        Respectfully submitted,

                                        DRIGGERS, SCHULTZ & HERBST

                                        */s/ Mark Kelley Schwartz*
                                        By:  Mark Kelley Schwartz (P48058)
                                        Attorney for Plaintiff
                                        3331 West Big Beaver Road, Ste. 101
                                        Troy, MI 48084
                                        Telephone:  (248) 649-6000
Dated:  August 12, 2024                 MSchwartz@DriggersSchultz.com